## SCHMITZ et al. v. JUDD et al.

### No. 1967.

Court of Civil Appeals of Texas. Beaumont. July 9, 1930.

W. L. Hill and Hill & Harvey, all of Houston, for appellants.

Fulbright, Crooker & Freeman, of Houston, for appellees.

O'QUINN, J.

Appellants were plaintiffs in the court below, and appellees were defendants. We shall refer to them as such.

Plaintiffs, N. S. Schmitz and F. W. Morris, sued defendants, John T. Judd, Estella D. Judd, and Mrs. Margaret Cartmell Dougherty, a widow, to recover commissions alleged to be due them for the sale of what was known as the Dougherty ranch in Star and Hidalgo counties in Texas, consisting of about 80,000 acres of land. In substance, plaintiffs alleged that defendants were the owners of the land, and employed plaintiffs to sell said land for them, and agreed to pay plaintiffs a commission of 5 per cent. of the sales price, the commission to be divided among plaintiffs and Estella D. Judd, one of the defendants, in equal portions. They further alleged that in furtherance of their efforts to effect a sale of the land, they employed one J. J. Heathcock to assist them, and that they and their said agent, Heathcock, diligently pushed sale of said land until same was accomplished, and that they expended $500 or more in advertising said land and in showing same to prospective purchasers and in advances to Heathcock, all of which was done with the knowledge and consent of defendants; that about August 11, 1926, Heathcock, acting for and on behalf of plaintiffs, sold the land to G. O. Newman of Dallas, Tex., for a price of $656,694.69; that defendants accepted said Newman as such purchaser through Heathcock, and conveyed the land to said Newman; that of said consideration $354,810.48 was paid in cash and the balance of said consideration was paid by the purchaser assuming certain indebtedness due the state on certain of the lands comprising said ranch, and by said Newman executing his certain notes payable to defendants; that defendants paid Heathcock $5,000 as commission and also paid Mrs. Estella Judd the amount due her, but refused to pay plaintiffs any sum, and prayed for judgment for the sum of $32,834.70, less the sums paid Heathcock and Mrs. Judd.

Defendants answered by general demurrer, several special exceptions, general denial, the two and four years statutes of limitation against plaintiffs' asserted cause of action, and specially denied that Heathcock, in attempting to procure a sale of the land, was acting for or in behalf of plaintiffs, or in their employment; that at the time of the

sale of the land, Heathcock was acting for and in his own behalf and his associate H. C. Harter, under a special agreement and contract with defendants made long after said Heathcock had ceased to act in any manner or connection whatever with plaintiffs; that Heathcock was not the procuring cause of said sale, but that if he was then he had repudiated his contract with plaintiffs, and defendants had fully paid off and settled with Heathcock for any claim he may have had by reason of any efforts he had made trying to effect a sale of the land. They further answered that the listing of the land in question with plaintiffs was not exclusive, but that said land was listed with various other real estate brokers for sale, and that said land was listed for sale with Harter and Heathcock by defendants, directly and independently of any connection with plaintiffs, and that at the time said land was so listed with Harter and Heathcock said Heathcock had abandoned and severed any and all relations or interests he ever had with plaintiffs: that any authority or right defendants ever gave to plaintiffs to make sale of said land had expired and ended by lapse of time and failure on the part of plaintiffs, within a reasonable time, to make a sale of the land; that defendant John T. Judd was actively in charge of the premises sought to be sold, and was actively and constantly endeavoring to himself make sale of same; that the authority given by defendants to Harter and Heathcock to sell said land was given to them directly and personally and not subordinate or junior to the rights of any other persons, and that said right was not given to said Harter and Heathcock as the agents or representatives of any others, but to them as principals to act for themselves only; that the commission of 5 per cent. for the sale of said land was paid by defendants to J. J. McCook, the purchaser of said land, by permitting him to deduct same from the purchase price, all of which was known to plaintiffs, and without protest by plaintiffs, and pleaded that thereby plaintiffs were estopped to assert their claim.

The case was tried to a jury upon special issues, in answer to which they found:

(a) That defendants employed plaintiffs to make sale of the land;

(b) That defendants agreed to pay plaintiffs a commission in the event they made a sale of the land;

(c) That plaintiff Schmitz employed Heathcock to assist him in making a sale of the land;

(d) That Heathcock accepted such employment;

(e) That plaintiff Schmitz told defendants before the transfer of the title to the land in question to Newman that he (Schmitz) had engaged Heathcock to assist him in selling the land;

(f) That Newman did not buy the land from defendants for his personal use and benefit;

(g) That Newman bought the land for the use of himself and J. J. McCook;

(h) That Heathcock abandoned his association with plaintiff Schmitz in relation to the sale of the land, and was endeavoring to effect a sale as a broker in his own behalf at the time the sale was made;

(i) That Judd would not have made the sale in question for himself and the other defendants unless a settlement between Harter, Heathcock, McCook, and Judd, of Harter and Heathcock's claim for a commission on the sale had been agreed to and settled; and

(j) That plaintiff Schmitz, by his acts and conduct, led defendants to believe that he had abandoned any effort to make a sale of the land through Heathcock.

On the answers of the jury, the court rendered judgment for defendants, to which plaintiffs excepted, and the case is before us on appeal.

The first proposition asserts that the court erred in refusing to give plaintiffs' special requested issue to the jury, which reads:

"Were the plaintiffs, N. S. Schmitz and F. W. Norris, or either of them, the procuring cause of the sale of the defendants' land, known as the Jim Wells Ranch?"

"Answer 'yes' or 'no.'"

The theory of plaintiffs that they were entitled to a commission for the sale of the land was based solely upon the fact that plaintiff Schmitz employed Heathcock to assist him in making a sale of the land, and the contention that Heathcock was the procuring cause of the sale that was eventually effected, and hence they were in law the procuring cause because Heathcock was their agent. The undisputed evidence shows that the authority given plaintiff Norris to sell the land was revoked in 1924, and that he was expressly forbidden to have anything further to do with selling same. That being true, he could not recover a commission for the sale of the land, as the evidence failed to disclose any effort by him, or anyone for him, in any respect to make such sale. Schmitz's claim is asserted on the efforts of Heathcock, it being shown that he employed Heathcock to assist him in effecting a sale of the land. It was contended by defendants, and the jury found on a proper issue, that Heathcock had abandoned his association with Schmitz, and had undertaken to sell the land as a broker in his own behalf, and the jury further found that said plaintiff, Schmitz, had led defendants to believe that he was not seeking to sell the land through Heathcock. These findings, which are fully supported by the record, are fatal to plaintiff Schmitz's claim of right to recover commissions on the theory that Heathcock was the procuring cause of the sale of the land. The assignment is overruled.

■■ The plaintiffs' second proposition, in effect, complains that the court erred in not giving their special requested charge defining "procuring cause." This assignment is overruled. As above stated, plaintiffs base their right to commissions on their contention that Heathcock was their agent and that he was the procuring cause of the sale. The record amply supports the jury's finding that long before the sale was made, Heathcock had abandoned any connection he ever had with plaintiff Schmitz, and his efforts to effect a sale of the land were as a real estate broker for himself, independently of and disassociated from Schmitz. Moreover, the requested charge was not proper under the facts, for in that there was no proof that plaintiffs, or any one associated with them, brought about the sale. Furthermore, we think the requested charge was not a definition of any legal term, but was a general charge relative to the substantive law of the case. In any event, the definition of "procuring cause" given by the court we think was sufficient.

■■ The third proposition insists that "the court erred in giving Special Issues No. 6 and 6½." Special issue No. 6 inquired whether Newman bought the land from defendants for his own personal use and benefit, which the jury answered, "No." Special issue No. 6½ asked whether Newman bought the land for the use and benefit of himself and J. J. McCook, to which the jury answered, "Yes.". This assignment is multifarious, and should not be considered. However, if considered, no error is shown. The contention of plaintiffs is that irrespective of whether Newman bought the property for his personal use or for the use and benefit of himself and McCook, they were entitled to a commission. This contention has no force, for in that plaintiffs failed in any way to connect themselves with the sale of the land. Having in no way, by their own efforts, or through the efforts of any one connected with them, procured the sale, their claim for a commission fails. As before stated, plaintiffs base their claim for a commission solely upon their contention that Heathcock was their agent and that Heathcock was the procuring cause of the sale. Heathcock had not only abandoned any connection with plaintiffs, but he had associated himself with H. C. Harter for the purpose of effecting a sale. Harter introduced Newman to Judd. The original deal sought to be made by Newman fell down and was completely abandoned. McCook, without any contract with any of the brokers trying to make a sale of the land, placed himself in touch with Judd, and McCook himself perfected the arrangements for the completion of the deal. He took the title to the land in Newman's name, as a matter of convenience only, as Newman was going to represent him in selling the land. But aside from all this, the evidence showed, and the jury found, that Heathcock had abandoned his association with Schmitz and that Schmitz had led defendants to believe that there was no such association.

The fourth proposition is that the court erred in submitting special issue No. 8, which inquired whether Heathcock had abandoned his association with Schmitz and undertook to sell the land as a broker in his own behalf. It is contended that this issue was not raised by the evidence, and that the finding of the jury is without support in the evidence. The assignment is overruled. The issue was raised by the pleadings and the evidence, and the evidence amply supports the finding. This disposes also of plaintiffs' sixth proposition.

■ Plaintiffs' fifth proposition complains that the court erred in submitting special issue No. 9 to the jury. It reads:

"Would the defendant Judd have made the sale in question for himself and the other defendants unless a settlement between Harter, Heathcock, McCook and Judd of Harter and Heathcock's claim for commission had been settled and agreed to?"

The jury answered this issue, "No."

It is insisted that this issue was improper because plaintiffs were not parties to the settlement referred to, and because plaintiff Schmitz having found through Heathcock, G. O. Newman, who was ready, willing, and able to purchase the land and to pay for same on the terms which were accepted by defendants, and who later did purchase same, defendants were liable to plaintiffs for their commission. Briefly, the record reflects that in November, 1923, defendants were exceedingly anxious to sell the land, and offered Schmitz, along with numerous other real estate brokers, 5 per cent. commission if he effected a sale of the land in question. Schmitz arranged with Heathcock whereby he would divide his commission with Heathcock if Heathcock would assist him in making a sale of the land. Some correspondence between Schmitz and Heathcock relative to the matter followed until about June, 1924. No sale or any prospect of one had been developed, and it is admitted that after this time, June, 1924, to the time of the sale of the land in 1926, no further communications between them relative to same was had. Some two years later, in 1926, Heathcock was residing in the "Valley," and had associated himself with one H. C. Harter, who resided at Edinburg, in the "Valley," and in about March or April of that year went to see Judd to get an oil lease on the property, which Judd refused. Heathcock went back and reported to Harter that Judd would not give an oil lease on the land, but that the land was for sale. Harter told Heathcock that he (Harter) had some people that he thought he could sell the land to. Harter got in touch with Judd, and Judd, March 1, 1926, in a letter to Harter authorized him to sell the land on certain terms, and offered to pay him

5 per cent. commission, for effecting a sale. Harter and Heathcock then entered into a written contract with defendants to sell the land to J. H. Darby and G. O. Newman, and defendants promised them a commission of 5 per cent. if the sale was effected. The sale fell down because Darby and Newman, nor either of them, could finance the purchase. Newman testified that he was neither ready, willing, nor able to purchase the property because of his inability to finance the purchase.

Later on Judd had Heathcock meet him at San Antonio, Tex., and inquired of Heathcock whether he knew one J. J. McCook, who was trying to buy the land, but who wanted to be allowed the 5 per cent. commission as a credit or deduction on the purchase price. Heathcock knew nothing of McCook. Judd then told Heathcock that he (Judd) suspected that Newman had told McCook about the land and that he would not deal with McCook until after the matter of commissions was settled. It is undisputed that neither of the plaintiffs were acquainted with McCook or had had any sort of communication with him. McCook lived at Dallas, Tex. He testified that he had heard that Judd had some land for sale in the "Valley," and that about April, 1926, he was in San Antonio attending a convention and heard that Judd was stopping there at a hotel, and that he went to the hotel and introduced himself to Judd and had a talk with him about the land. He said that a Mrs. Buchanan of Dallas, and a man named Perry, who lived in the "Valley," had told him about Judd having some land for sale. He told Judd that he was representing himself and had to have 5 per cent. commission. Judd agreed to allow the 5 per cent. commission to McCook by way of a reduction in the purchase price. Judd also told McCook that Mrs. Judd had been promised $3,000 out of the commission. The deal was not closed at that time. Shortly after this first interview, McCook was again in San Antonio and again called to see Judd. He told Judd that if satisfactory terms, proper release clauses, and rate of interest could be agreed on, he thought he could get Mr. G. O. Newman to go into the deal with him. As soon as he told Judd about Newman, Judd stated that he had already figured on a deal with Darby in which Newman was to have been interested, and that there had been some real estate agents, Heathcock and Harter, who had figured on that deal, and he (Judd) would not go any further with him (McCook) unless arrangements were made with them in case they should assert a claim for commission, and McCook told Judd that he (McCook) would not buy the land unless he got the 5 per cent. commisssion. McCook then went back to Dallas. McCook was acquainted with Newman, having met him several years before at Corpus Christi. Later Judd wired McCook to come to San Antonio; that he (Judd) thought he could adjust the matter of commissions. Heathcock phoned McCook to go down and close the deal with Judd if he wanted to; that he had agreed with Judd to accept $5,000 for his claim for commission. McCook went to San Antonio, and there he met Heathcock for the first time. McCook took Newman with him for the purpose, he says, of assisting him (McCook) in fixing up the release clauses and terms of sale. He said that he finally agreed to let the $5,000 for Heathcock and the $3,000 for Mrs. Judd be added to the cost of the land; that is, taken out of the 5 per cent. commission he was to receive by way of reduction in the purchase price. He further testified that Newman was to look after selling the land for him (McCook), and that he took the deed to the land in Newman's name as a matter of convenience in conveying. After considerable parleying and adjusting differences between Judd and McCook, the deal was closed and the contract of sale reduced to writing, and this contract disposed of Harter and Heathcock's claim for commission in the sum of $5,000, and a commission of $3,000 for Mrs. Judd, and the commission allowed to McCook as a reduction in the purchase price. This contract was signed by Judd for the defendants, and by McCook, and by Heathcock and Harter.

It appears without dispute that plaintiffs had no part in bringing about the sale; that Heathcock, some two years prior to the sale, had abandoned all relations with Schmitz in endeavoring to effect a sale, and had gone to the "Valley" and had associated himself with Harter in the real estate business; that Harter was duly authorized by defendants to make a sale of the land; that a sale to Darby and Newman was agreed to but never effected because they could not finance the deal, and same was completely abandoned; that McCook, who lived in Dallas, had heard of the land through persons in no way interested in or connected with trying to sell the land, and had, while in San Antonio on other business, accidentally come in contact with Judd, introduced himself to Judd, and took up the matter of purchasing the land for himself, and finally closed the deal and took the deed to the land in the name of Newman for the sole purpose of convenience in selling the same through Newman as his agent; that neither Newman nor Heathcock had anything to do with originating or closing the deal; and that Judd, before closing the sale, stated to McCook that he would not make the sale unless the matter of commission, as claimed by Heathcock and Harter, was settled, and refused to go further with the matter until same was done. It is clear that the purchaser, McCook, was not "found" by plaintiffs or by any one acting for them, but that McCook for himself instituted personally the negotiations with Judd that finally led up to the sale of the land. The fact that Judd insisted upon and refused to perfect the deal

until whatever claim Harter and Heathcock might have or make to a commission but evidenced Judd's extra caution that he should not be held for the payment of any commission other than to McCook in the reduction of the purchase price. The assignment is overruled.

■ Plaintiffs' final proposition is that the court erred in failing to render judgment for them because the evidence shows that they were the procuring cause of the sale. In other words, their complaint is that the evidence does not support the findings of the jury nor the judgment of the court. This assignment is overruled. The evidence in no sense shows that plaintiffs were the procuring cause of the sale to McCook, but to the contrary abundantly supports the findings of the jury on the issues submitted, and hence the judgment of the court.

Our holding against plaintiffs' first assignment, we think, decides the case, and rendered a discussion of the other propositions immaterial, but because of plaintiffs' vigorous pressing of each of the other propositions, we have discussed them all. The judgment should be affirmed, and it is so ordered.

Affirmed.